The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Thank you. Mr. Alwick. May it please the Court. My name is James Alwick. It's my privilege to represent the appellant in this appeal who I'm going to refer to as law firm for this argument this morning. Good morning. This Court should reverse the District Court's decision denying a preliminary injunction and remand with instructions that all of the seized materials either be returned to law firm or sent for further review by a magistrate judge or a special master to ensure that the attorney-client privilege and work product protections that apply to law firms' clients are protected and only responsive non-privileged documents are released to the government. We also request that this Court order that no further review at all be permitted until the government produces an unredacted copy of Attachment B-1 that provides the fundamental parameters to this search that has never been provided except in a fully redacted form for the search terms. So let me give a very brief summary of the facts if I may. Earlier this year, the government executed a search and seizure at the premises of a law firm and obtained numerous records. The government seized a client file of a law firm for Client A who is the target of an investigation. The government also seized more than 50,000 emails from the inbox and outbox of Lawyer A who is also said to be a target with respect to Lawyer A's representation of Client A. There's an attorney-client relationship between Lawyer A and Client A? Yes, sir. And between Client A and the law firm? Correct, sir. So almost all of these emails, however, do not appear to have any connection with Client A at all. Of the 50,000 plus emails that were seized by the government, approximately 116 were either to or from Client A. Counsel, aside from the number of emails, what other evidence did the law firm put in front of the judge to indicate that privileged material beyond what was the target of the warrant was seized? Well, we put before the judge an affidavit of the IT professional from the law firm and his affidavit is in the joint appendix. And that has the number of emails, right? Correct. That respond to the particular search terms. The exact number of the emails and the number of kilobytes that each one of those downloads took. Is there a counter affidavit of any kind? No, sir. From the other side? No, sir. Isn't there also an affidavit that talks about Lawyer A having other clients with matters that are open? It was a bit ambiguous. I wasn't sure how to read. Yes, ma'am. There are two affidavits in the... There are two affidavits. There's an affidavit of one of the lawyers in the law firm. I'm not going to name because we're trying to respect that. But that's at... The IT professional is at joint appendix 80 and the lawyer's affidavit is at joint appendix 66. And what the lawyer's affidavit says is that in addition to the emails that were seized from Lawyer A's account, his inbox, I should say, that the law firm frequently consults among the lawyers. This is a multi-lawyer law firm with a significant number of lawyers. And they work collaboratively like many people do in law firms and talk about each other's cases and communicate with each other about each other's cases. So not only do the emails include references to work product with respect to Lawyer A and his clients, unrelated to Client A totally, but it also includes references to Lawyer A's interaction with his partners in the law firm about other clients. So they have essentially taken every email that was on the servers at law firm that was related to Lawyer A. Whether it had anything to do with Client A at all. Has anything been returned? No, sir. Nothing's been returned. So have they contested that they have all the emails, they have emails relating to other clients? No, sir. That's not disputed. That's undisputed. So the government recognized that this was going to happen. Some of those emails deal with things like, what do I do if this client comes in here and has issues he wants to discuss about his tax returns for the last 10 years? Any email that Lawyer A was involved in with respect to any client matter. And he was the kind of a fellow that engaged in a lot of criminal practice. White-collar criminal practice. That's correct. Lawyer A's. Right. But if a lawyer asked him a question and said, a client has issues about 10 years of tax returns, he's worried the government's going to find out. And if Lawyer A said, well, I would have him sit tight and not do anything. Or I would have him amend his tax returns or do something, which would be legal advice. Yes, sir. Or possible legal advice. That would be in the materials that are received? I can't tell you that such an email is in there because I haven't read all 20,000 emails. Right. I'm not saying you know what's in there. But yes, it could be. Yes, sir. All right. I'm just making something up. Yes, sir. But that's a hypothetical that could occur in a large firm. Absolutely. If somebody came in with that kind of an issue, one of the partners might turn to the so-called expert or perceived expert in the criminal law. That's exactly right. The firm has the emails? What happened was that the firm's IT person assisted the agents in downloading a copy of the entire load of emails. And so, yes, the firm has a copy. Although laborious, you could have an answer to Judge Rushen's question, couldn't you? Yes. Because the question is, what percentage are privileged? And you could do that, firm-wise. Yes, sir. The firm could. Yes, sir. But it has not. That's correct. So the government recognized that it was seizing. Is it your position that all of them are privileged? It's my position that thousands of privileged documents are in there. I don't know whether every single one of them is privileged, although one could make the argument that since it involves the actions of law firms, that they're likely to be almost all privileged either by the current client or by the work product document. Because from the standpoint of work product, it's going to be what the lawyers are doing every day for their clients. So the government recognized that there was going to be an issue about this, which is why they instituted and asked the magistrate to adopt what they called filter team protocols. And those filter team protocols are in the Joint Appendix. And those protocols permit the government agents and attorneys to review, that's the word, quote, review, close quote, the communications between law firm and its clients. This is what in the civil context would be called a privilege review with one important distinction. Privilege reviews in the civil context are always performed by the party that pulls the privilege. And that party then sends a privilege log to the requesting party. And if there is a dispute about whether or not a document should be withheld on the basis of privilege, the attorneys debate it back and forth. And if it can't be resolved, it's given to the court. In the civil cases, they're usually dealing with subpoenas. Yes, sir. This is not a subpoena case. That's correct. They could have issued a grand jury subpoena. They could have. And then it could have been litigated. That's correct. Before the court, before they're turned over. But the government didn't want it to be that way. That's correct. They wanted to get a hold of them first. That's correct. They wanted to look at them first, so they do it by search warrant. That's correct. That's the way it works. Yes, sir. Now, they say in their brief that they got the approval of the United States attorney to do it this way, by grand jury subpoena, not by search warrant, and they say they got the approval of Big Wigs and the Department of Justice. Yes, they do. But is any of that in the record on appeal? No, sir. They just added that in? They stated it. They say it in their brief, but it's not in the record. That's correct. That being said, I don't doubt that that's true. Well, it might be true, but the record is supposed to be the record. I agree. The point here is, though, that the district court below had the power, and I believe the obligation, to say that once they have seized these documents, they should not be the ones turning the pages to look at the privileged material. There is a path that has been set here. But they say they're doing it in the Greenbelt office, and the real prosecutors are up in Baltimore. That's what they say. And that cleans it up. I don't think it does, though, because they're still an adversary party. They're still an adversary party. They are still the ones who are not the holders of the privilege. They are, in fact, adverse to the privilege. This court held back in 1988 in the In re Marietta Corporation case that where you hand your adversary or where your adversary gets a privileged communication, not only does it eliminate the attorney-client privilege for those documents, it's a subject matter. This court held. Counsel, sorry to interrupt you, but does a district court judge ever have discretion to authorize paint team review of documents that are maybe seized from a law firm or that are seized from a lawyer's home? Is there ever room for that, or is that always an abuse of discretion under your reading? I believe it's a judicial function. I believe that the determination of whether or not something is privileged is a judicial function in the Federal Rules of Evidence, for example. You said it's a non-delegable, can't be delegated to the paint team? Correct, non-delegable. Because then it goes out to the? It could be delegated to a magistrate judge, Article III delegation. But it has to stay within the court system. It has to stay within the court system. So what are they supposed to do when they conduct the search? They have to actually return instead of the inventory has to be a return of the documents themselves. The documents themselves should be where you know that you have seized. You have to know. You're searching a law firm. It's full of privileged documents. You've seized an entire email file. At that point, they should do what they did in the Stewart case in the Southern District of New York, and they said we're going to segregate these, we're not going to look at them, and we're going to wait to see what the court does. Are you familiar with that case in the Sixth Circuit? All these things are called the United States versus under seal or something. Yes, sir. But this guy has a similar name. Written by Judge Boggs. If it's the Kaufman case, I'm familiar with it, Your Honor. Kaufman's not in it, but the Sixth Circuit in 2006, Judge Boggs was on it, Judge Sutton was on it, and there was a district judge on it. And they didn't like these taint teams, and Judge Boggs said it was like putting the fox in charge of the hen house. Well, in my view, it's putting your adversary in charge of your privilege. Same thing. The terminology he used was that. Yes, sir. But it was a subpoena case. Right. It was not a search case. Right. Is that a basis for distinction? I don't think so. Because it's just a way of obtaining the documents. That's just a mechanism. That's a way of getting the documents into your hands. You subpoena them, you search them, get them in your hands. What you do next is what's important. And what the court ordered, for example, in Stewart or in the Galejo cases that we cited and on whose reasoning we relied, what they said is at this point, we, the court, have the power to appoint a special master. The special master can then go through these documents. He has the power to appoint. The court does, but it doesn't have to. The court can do the work itself. That's correct. But I'm assuming that the court would want to. We all have law clerks. I assume. Yes, sir. To help out. They had DEA agents, or they have DEA agents and IRS agents and paralegals doing the work, non-lawyers. Right. Right? They're doing that. Well, they're both. Their so-called filter team included AUSAs. But they were the supervisors. Yes, sir. But it included IRS agents? Yes, sir. DEA agents? Paralegals? I don't know if there were DEA agents, but I know there were IRS agents. Yes, sir. DEA agents? Yes, sir. Mr. Elmer, you've taken the position sort of categorically, per se, that the filter team is not appropriate under any instance. And that's obviously your choice. For good reason, I'm sure you have that. But if we disagree with you on that point, the per se that you asked us to look at this, can you point to a particular abuse of discretion or error? Yes, sir. In this case, beyond your categorical, would you address that? Yes, sir. It's really, I would say, it's not so much a per se rule because I don't know why you're arguing that. It looks to me like you're going to say what is to say in these circumstances. Yes, sir. It was error. I mean, what if it was one lawyer operation, sole practitioner, that had one client? Right. I mean, you had a case similar to this with Cohen in New York. Yes, sir. And they appointed a special master. They did. And, Your Honor, Judge King, you sort of anticipated what I was going to say, which is that I suppose there are circumstances where the law firm is what this court referred to once as permeated with fraud, where the operations has stopped being a law firm and started being a criminal operation. In those circumstances where the crime-fraud exception is going to apply to everything virtually, then fine. I could see circumstances there where a filter team would be appropriate. But where you have a large law firm like we do here that has many partners and where you have a lawyer who is said to be involved with only one client, there's no claim here that there is any criminal activity between anybody except lawyer A and client A and nobody else. No other clients are accused of anything. And all of those innocent clients' privileges are being aggregated by the review, by their adversary party. I think that's an abuse of discretion not to settle that. I see I'm cutting into my rebuttal time, so I would respectfully reserve the rest of my comments for that time. All right. Thank you, counsel. Mr. Hines. Morning, Your Honors. May it please the Court, my name is Derek Hines and I represent the United States. We are fortunate to be a part of a legal profession where lawyers practice ethically, honestly, and lawfully. This case, unfortunately, is an exception to that norm. Here a magistrate judge found probable cause to believe that target lawyer A, who's employed by the law firm, obstructed justice and used his law firm's resources to do so. He engaged in a conduct that threatens to destroy the judicial process. Two federal judges familiar with the facts of this case have appointed a court-supervised filter review. That review has protected privilege matters and has already been substantially completed. The government has made several attempts to further mitigate any risk of a breach of privilege, but the law firm has explicitly rejected such attempts. We ask that this court affirm the district court's procedure because its limited incursion into privilege is outweighed by the public's strong interest in rooting out criminal conduct by a lawyer. I'd like to begin by answering a couple of Your Honors' questions regarding some of the things that the law firm could have done to mitigate the perceived harm to its clients. The government here has undertaken three significant efforts in addition to the already mandated court-ordered filter review to mitigate any harm to its clients. First, immediately after the search, the government asked the law firm for a list of clients. How can they give you a list of clients? Because, Your Honor... Attorney-client relationship is none of the government's business. Have you ever practiced law? Your Honor... Have you ever practiced law privately? I have, Your Honor. Have you had a client walk in and talk to you about a criminal matter? Yes, I have, Your Honor. And that's protected by an attorney-client privilege. And you have an attorney-client relationship. Is the existence of that relationship prior to a charge or something in the public record? Is that any of the government's business? Answer that yes or no. It is not protected by privilege, Your Honor. It is. The existence of it is. It's not a matter of public record. It's none of the government's business. Certainly, the content of communications between a client and lawyer are protected, the nature of the relationship between the client and lawyer, but the mere fact that a client has an attorney-client relationship with a firm... The fact that you've gone and talked to a criminal lawyer and established an attorney-client relationship prior to an indictment, prior to a charge, prior to something in the public record, the government just can't come in and say to the lawyer, tell me who your clients are. You can't do that, can you? You can come in and ask, but the lawyer can say, no, I'm not going to tell you who my clients are. Well, the client can say no as well. The client can say no, too. And this protocol says that this Taint team is authorized to contact the clients directly and ask them for a waiver. Now, who came up with that idea? So that would be... That's a direct violation of the Code of Professional Responsibility. Making a direct contact to a client, represented client that you know is represented, and you all want to do that. In these protocols that were approved before the search was ever conducted, this team was going to be able to go out and talk to the clients directly and ask them for a waiver of their attorney-client privilege. Your Honor, respectfully, that's not actually what the protocol says or how it's going to be implemented. All right. What it says is that if a client is no longer represented by the law firm, then the government could reach out to that client. There's multiple reasons why the government would need to do so to see whose new counsel is, to effectuate a proper waiver of that privilege. Here the government was operating at all times under the auspices of the court. And so any such directive, any such movement, any such request by the government would run through the magistrate or judge in this case. I'm saying that the protocols provide for that. That would happen, Your Honor, if the law firm was no longer representing the client. I just want to briefly go back to that, Your Honor's concern before. Well, it's at the bottom of page 42. Well, that's in the sealed appendix. That hasn't been filed. But it's at page 4 or page 3 of the attachment about things to be seized and the filter team's practices. The filter team may contact the attorney's clients to obtain waivers of the attorney-client privilege. May contact the attorney's clients. So I believe, Your Honor, that that provision is... Do you agree that that contravenes the Code of Professional Responsibility? So this contemplates... Do you agree with that? I don't, Your Honor. These are... You don't agree. You say you can contact a client that you know is represented and ask them for a waiver of the attorney-client relationship with their lawyer. Respectfully, Your Honor, that's not what I'm saying. What I'm saying is this provision is designed that... Does the government sponsor this position around the country? So these are standard DOJ protocols. This provision has not been contested at the district court or magistrate court level, and it also has not been implemented. Maybe they've never read it. I don't know, but that's what it says right here. Your Honor, there's no record of the government having done that in this case, contacting any clients of lawyers who are actively representing those clients to obtain attorney-client waivers. That is simply not the record in this case, nor how this provision was designed. Just to go back to... Do you agree that Client A is the only one that's at issue here? No, Your Honor. There are other people, as identified in the sealed search warrant, that are allegedly participants in the conspiracy to obstruct justice. They're represented by Lawyer A or the law firm? No, they are not represented by the lawyer. I'm talking about clients of the law firm. Is Client A the only one at issue? Yes, Your Honor. So Client A. So anything that you have, and you're the government, that you have seized and that you've had here for two months or whatever it is, anything that you've seized that doesn't relate to Client A, that is, it relates to clients B through Z, let's assume they've got 26 clients, the rest of them in the alphabet, Client B through Z, if they relate to any of those, they were beyond the scope of the warrant. That is not quite correct, Your Honor. They were beyond the scope of the affidavit supporting the warrant? No, Your Honor. The warrant explicitly authorized law enforcement to seize emails. In this case, they seized emails from... Well, then it has to be beyond the scope of the affidavit. If Client A is the only one, then the warrant is broader than the... Then we don't have them. They don't have them. You've never supplied them to the other side. But if the warrant authorizes a seizure beyond what the affidavit supports, then the warrant's overly broad. And if you have, in fact, seized material that's not supported by the finding of probable cause, you've improperly seized it. So if you have material from Clients B through Z, the other clients of the law firm, they're none of the government's business. Judge King, the government is not required to know exactly where the incriminating evidence will be found. The government's obligated not to exceed the warrant. This search did not exceed the warrant. The government was explicitly authorized to seize emails in this case. This is no different than... Well, they don't have the authorization. They don't have the seizure part of it, or the authorized seizure part of it. All we have to decide here is whether the filter team, I think, whether the filter team is proper in this situation. That's correct, Your Honor. With a multiple lawyer law firm, with a multiple client law firm, that you're only looking for the communications between one lawyer and one client? The government is not only looking for the communications between one lawyer and one client. They're looking for communications with that lawyer and other individuals identified in the affidavit, as well as... But you said they aren't clients. That's correct. I'm talking about the clients. Of the 26 clients in your hypothetical, Your Honor, that's correct. Only Client A? Correct, Your Honor. I would submit that this... In your brief, you call him a target lawyer. He is a target lawyer. Well, he's a client of the law firm. He was a client of the law firm. He is a client of the law firm in the facts of this case. Correct. He's no longer... You don't challenge the attorney-client privilege. If you do, then you can't use the exception. If you challenge that there's got to be an attorney-client relationship to apply the crime-fraud exception to. No dispute there, Your Honor. We agree that there was an attorney-client relationship. Well, you haven't agreed that in your brief. That's a good concession to have on the record here. You call him a target lawyer rather than a client. We maintain that the crime-fraud exception applies, and he is a target lawyer. You've got a probable cause finding from the judge as to Client A, as to Client A and as to Lawyer A. And the question is how far you went beyond that. They say that there was 116 e-mails from Client A to and from Client A, and 50,000 e-mails seized, that more than 99% don't relate to Client A. Judge King, if I may make an analogy here. What happened in this case is no different than when the government goes in and looks at the file cabinet in the law firm. Goes through the files in that law firm and looks for the file for Client A as they did in this case. They seized that single client file on the day of the search through the law firm. They were authorized to search through the law firm. They didn't know exactly which file would be in the filing cabinet, how the file was labeled, how thick the file was, how many documents were in it. But they seized that file, and they were allowed to do so according to the search form. This is no different. What they've done in a 23-person law firm, and that doesn't include the paralegals, staff, associates, etc. In this 23-lawyer law firm, they've gone in and seized a single e-mail custodian file. Certainly, that e-mail may contain communications unrelated to direct communications with Client A. But the government has a right pursuant to the search warrant to go through that. This isn't a generalized search. They have to search through those materials to sift the wheat from the chaff. That's what the case law says, and find out exactly what. You say the government has a right to. The court, your honorable opponent there says, has to be doing this because it's a judicial function to see if you are complying with the warrant that was issued by the court. And the court is doing that through the filter review protocol. No, but the way the filter review sets it up, the government looks at it first. Correct. The DEA agent looks at it first. The IRS agent looks at it first. Non-lawyers are looking at it first rather than the court doing it. And if it's a judicial function, the court needs to look at it first. That's the way it happens if you subpoena. If you'd had a subpoena here rather than a search warrant, the court would have had a motion to quash, and they would have litigated what you could get and what you couldn't get. And you all didn't want to mess with that. You wanted to get in there and do it. And what the spring quarter, the Third Circuit called it, rummaging through the law firm's files to do it this way, right? So we dispute that, Your Honor. We are not rummaging through. I know you say you're not rummaging through it, but they say you are rummaging through nearly 50,000 e-mails is what they got. And that's what Judge Baum's out there in the Sixth Circuit said. It's nothing but the box being in the hen house. And if you grew up on a farm, you understand a little bit about what that is. Your Honor, to go through exactly what the agents are doing in this case, they are reviewing the e-mails for evidence of the crimes that are committed. But whether they're privileged or not needs to be decided first. And that's what Mr. Ehrlich says is a judicial function. I would submit to the court that that is. But it's not a judicial function. The privilege determination certainly is a judicial function, and that is every single privilege. And if it's privileged, you're not entitled to it. Correct. But you already have it. I do not have any of the e-mails, and I never will receive them as a member of the investigation. You, the government, have them. You, the government, have them. You have them. You took them. The government. And I'm talking about the executive branch. And what he's saying is that the judicial branch needs to decide first which of them you can have. The judicial branch authorized the executive branch to seize those e-mails. I understand that. He says that's this filter team authorization. That's the issue here, is the filter team. The tank team is a term that's used commonly. I think that's what Judge Baltz called it, a tank team. They create a lot of problems for the government. I mean, there's no question about that. In that case up in New York, that Cohen case, they appointed a special master, a retired federal judge that did that work. But that was the one larger situation. And I don't know why magistrate judges can't do the work, to be honest with you. It doesn't sound complicated to me. And they got lawyers working for them that understand a little bit about privilege, or have been trained in it at least. And if they need more lawyers, they can go get more lawyers. I mean, we got provisions of giving them more personnel in important cases. Your Honor, the appellants in this case cite only one case in support of their position where there was a court-supervised filter review process. Every other case that they cite was a government-only filter review process where the government made privilege determinations on their own. The government decided this document is going to go from the investigative team to the filter team. That can never happen in this case. The judge has not improperly assigned her judicial function because she is the ultimate arbiter of privilege. Most of the cases you cite don't relate to law firms and different kinds of privilege. You recognize that, and you say there's no law firm exception. You even use that term. There's no law firm exception in your brief. But the right to counsel and the attorney-client privilege and the work-product privilege is supported by the Sixth Amendment. I mean, it's in the Constitution. And the courts have a special obligation to protect things that are in the Constitution. And so do you. So we absolutely respect the attorney-client privilege. There is nothing in the record in this case that the Sixth Amendment has attached to any client of the firm. They've actually conceded that there's no known clients involved with the U.S. Attorney's Office. The Sixth Amendment attached after criminal charges have been brought. But nonetheless, we are— I'm talking about the Sixth Amendment provides the underpinning for the attorney-client privilege. That's a common law right, Your Honor. Well, but the Sixth Amendment is tied into it. And the attorney work-product privilege, legal advice, is seeking legal advice. And there are countervailing interests in this case. And opinion work-product is very important. As is the Fourth Amendment, the Fifth Amendment, and the right for the government to go forward. They're all important. But they're specifically talking about attorney-client privilege and work-product privilege. An Upjohn case, the Supreme Court, and that Klutzman case is one of these things up there in the Third Circuit. And that Sixth Circuit case, you didn't even mention that. Judge Balmes, you say that's different because of a subpoena. So there's a Sixth Circuit case we do mention, U.S. v. Kauffman, which upheld the government's filter team. I'm not sure that that's the same case I'm talking about. I thought it might be. Most of them say U.S. v. sealed subpoena, grand jury subpoena, and all that kind of thing. We do cite multiple cases. They all have about the same name. We do cite multiple cases where courts have upheld filter teams for law firm searches. United States v. Liu, that's a Southern District of New York case.  And I'm telling you, the case I'm talking about is NRA grand jury subpoenas. 454, Fed Third, 511. Sixth Circuit, 2006. That's the one I'm talking about. And subsequently in the Sixth Circuit case, U.S. v. Kauffman, the Sixth Circuit said, the use of the taint team to sift the wheat from the chaff constitute an action respectful of, rather than injuries to the protection of privilege. And Judge Boggs talks about the obvious flaw in the taint team procedure. Colon, the government's fox, is left in charge of the appellant's hen house and may err by neglect or malice as well as by honest differences of opinion. That's the Sixth Circuit case that I've been talking about. We don't believe that there's, first of all, those motives. No, you don't believe. You think that these things are all right to do. And you've got it all written in the U.S. Attorney's Manual, although the U.S. Attorney's Manual has a specific disclaimer that says, sudden creating rights for anybody about anything. Your Honor, there's no record of actual harm in this case. As to the likelihood or potential likelihood of harm, the appellants vaguely proffer that there's 10,000 emails on the email system. There's no record of that in this case. We've asked the appellants to identify for us if there's any matter. I practiced law for a long time. At different times I practiced law. And I did a lot of criminal defense work. I was a prosecutor for a long time. And I would hate to think of the government hauling my file cabinet down to the IRS office and holding on to it for two months and rummaging through it. But I know, Your Honor, do not obstruct justice in the way that the Court of Oil Aided. You haven't charged anybody with anything. There's also a presumption of innocence in this country. But you take everything out of the law office and you look through it all. You look through it first because you're doing it by search as opposed to grand jury subpoena. And you wanted to say we went through a process and we studied on it and we decided to do it by subpoena. But that's not in the record. That's not in the record. Why do you go outside the record? Your Honor, first of all, if we'd issued a grant. And you even used a sealed appendix for your facts here. The appellant hasn't sought to unseal the motion. Well, but you used the sealed appendix that they don't have. It's not in the record on appeal. They didn't dispute the district court's access to it? No, we haven't filed that sealed appendix. I understand, Your Honor. All right. So you have your briefs full of material that's not available to the other side. Because it was available to the magistrate court and the district judge. But it's not available to the other side. And this is an adversary process right here. And the appellants have not moved before the magistrate or the district court to unseal that warrant. That is why it is sealed here before Your Honors because the district court and magistrate judge had access to it. And if I could just briefly conclude, Your Honor. In this case, the agents seized a single e-mail file and a single client file. And it was pursuant to a search warrant. They could not have issued a grand jury subpoena. There would have been certainly production privileges that could have applied. And this is an obstruction case. The act of issuing a grand jury subpoena. It's not an obstruction case. It's a question of whether there's no charges here. The question here is whether this filter team is properly appointed in the circumstances of this case. That's the issue here. As I understand it, it can't have to do with the scope of the warrant and all that stuff. Because it hasn't been litigated in the district court. And the other side hasn't been able to look at the affidavit. I mean, there's no suppression issues. Your Honor. Where is the filter team work product at this point? The law firm's work product? No, the filter team. Your team. So the filter team has already reviewed more than half of the documents. Where is the filter team's work product? That is all with the magistrate judge. No, did you file that with? We ordered you to send all the seized material to the magistrate judge. Your Honor, we doctored a letter with the deputy clerk. Did you send all the filter team's work product to the magistrate judge? Everything is electronic. All the coding, processing, it is all. Everything the filter team did is in the hands of the magistrate judge. Correct. Already. Okay. That's exactly what I appreciate. So they have substantially finished the review. They have done more than 50% of the review of these documents. Their coding has been preserved so it can be re-uploaded and completed in short order. But they're in the hands of the magistrate judge under seal. Correct. Along with the seized material. Correct. We complied with the court's order immediately. The court's order didn't tell you to do anything about what the filter team had done, about their memos or notes or conclusions or analysis or anything. We didn't tell you that. We told you to send the seized material from the search to the magistrate for filing under seal. And recognizing the spirit of that order, we not only did that, we did the coding and the processing. And that's what I was getting at. That's been substantially completed. And we ask that this court consider lifting its stay so the process can be completed in short order. Your Honors, no circuit court, no district court has ever held that a court-supervised filter review process that has already been substantially completed should be invalidated. Certainly the judges in this case. They wrote a letter one time to you and you didn't respond for a week while you were doing this work. And you didn't wait. And then they filed a motion with the court and then you get a hearing for 10 days or 12 days. If the question is likelihood of harm. And when the judge ruled, they filed their notice of appeal immediately. Your Honor, as far as the likelihood of harm in this case, it is significantly more likely that harm will be done if now a special master, a defense team, contractors, e-discovery vendors, new individuals, or a magistrate judge and staff are added to this process. How did y'all end up with all the judges over in Virginia? The bench in the District of Maryland recused itself. Judge Gregory appointed Judge O'Grady to preside over this matter. Okay. But all the judges in, is that in the record? Yes, it is in the record in the briefing. Well, I know it's in your brief. Y'all say so. But is it in the record in the district court anywhere? It's in the briefing before the district court. You just add things in. You don't support them in the record anywhere. And the magistrate judge, was she appointed by Judge O'Grady? She was appointed by the chief district judge in the Eastern District of Virginia. The chief district judge. Yeah. Because there's some provision in the magistrate law that somebody raised at some point that they don't, they can't issue a search warrant outside their district. No, she is designated to sit in Maryland on temporary assignment for this matter. Okay. For the record, I'll vouch that Mr. Hines' representation is 100% accurate. That's correct. Thank you, Judge. But I just have a question. Mr. Hines, is it your position that all of the materials that are deemed to be non-privileged and non-relevant to client A, you can see them, the government can see them? We can. However, how it's working in effect is the agents are going through the email, and if they can isolate a file or a series of communications that appear to be completely unrelated to what we're looking at, they're not looking at them. We don't have an interest in looking at them. But you can, though. We can spot check them because we have to ascertain if this is an obstruction investigation, he hasn't been charged yet, but the lawyer's intent at all times is completely relevant to the charges in this case. So if he communicates with a family member, an associate, and a friend, someone involved, listed in the affidavit, the things that he is saying are critical, and to evaluate that in a vacuum without any context whatsoever will actually do more harm to the privilege than help it because the agents in the case will not be able to assess whether this is, in fact, some privileged communication. If he says he agrees or let's destroy it, it could be related to some other innocuous matter, but just in a vacuum the agents won't know that. That's why it's a living, breathing process that the agents have to go through. Judge Russell? Judge Keene? I'm fine. Thank you, counsel. Thank you, Your Honor. Mr. Ulrich, you have some time left? I have a few minutes. If the Court's permission, I'll use a couple of them. Let me address a couple of things Mr. Hines said. With respect to his argument that this is no different than if the government went through the file cabinets in the offices of the law firm, I respectfully disagree with that. They seized essentially all of the correspondence. If you went back to the old pre-electronic days, it would be as if they seized every single piece of correspondence of lawyer A, even though they saw a file that said client A's file. Here it is. Presumably that's where they should stop, but instead they went and they scooped up every single bit of correspondence that lawyer A had in the entire law firm. That's like Klitzman. That was the rampage that the Third Circuit and Klitzman condemned and affirmed a preliminary injunction from the district court telling them they couldn't do that. He also said that the Court is doing review through the filter team. The Court is not doing the review. The review is being done by members of the executive branch. An Article III judge, I respectfully suggest, cannot delegate a judicial function to a member of the executive, which is what the protocols allow. Just to clarify my understanding, my understanding of the protocols is that no document goes to the investigative team absent either a court order saying that it's not privileged because of the exception and it can go, or an agreement between the law firm and the government. Is that right? I think that's essentially correct, Your Honor. From my standpoint, that doesn't matter because in the initial step, government agents and government AUSAs are making the privilege review. This is a privilege review. That's what they're doing. A privilege review should be either done by either the holder of the privilege or by a court in an in-camera setting or somebody that the court delegates its powers to. That's the only way you can protect the privilege. The privilege says you can't disclose it, the third part. To interrupt one more time, counsel. Of course. I'm trying to imagine this in a case that's not a law firm but where the privilege might be implicated. Say you have a defendant who already has an attorney and has potentially been in trouble with the law previously and there's a warrant to seize his email because of new crimes he's implicated in. There might be privileged emails with his attorney in there, but that's not the subject of the investigation. The subject of the investigation is something else. Yes, ma'am. Has a court ever said that the government can't get a warrant and grab those emails? Has the court ever said, no, you have to get a subpoena or you have to send a magistrate judge to the house to look through those emails? If not, how do we distinguish between those cases? Your Honor, I think in most of the cases that the government cited where a filter team was used with the court approval was in just the kind of situation that Your Honor just posited. Somebody's house is searched and in the house they find some privileged materials or a business is searched, same kind of thing, but it's not a law firm. And the difference between those two circumstances is a law firm by definition is a repository of privileged communications. That's where you're going to find them. It's just packed full of them. So it's the likeness. Between the work product privilege or doctrine and the attorney-client privilege, almost all of the documents that you're going to see there are potentially privileged. And so in this circumstance, to then take that filter team concept that may apply with just a couple of documents that in the course of a search are turned up and apply that to a law firm is, I think, an extrapolation beyond the allowance of the law. I'm sorry, Your Honor. It looks like you're about to ask me a question. I'm sorry. Is your biggest, I should say, bigger concern competence or confidentiality in terms of the filter team? Because one, can they competently determine privilege? Or on the other, can you trust that there won't be any bleaching into the other side of the prosecutorial team? It's really the confidence issue, and it's not a question of the honor of the AUSAs involved or the agents involved. It's the fact that the whole concept of the attorney-client privilege is that you, the client, are willing to tell your lawyer your innermost secrets and confidence, and some of them which may not be flattering at all, some of which may, in fact, talk about illegal behavior that you had in the past and what do I do about it. And you have to have the confidence that when you relay that information to the attorney, it's going to be protected. That's the whole idea of why we have this privilege in place, to encourage the full and frank and candid disclosure by clients to lawyers so lawyers can do their jobs for them. And that is why the rules have been put in place that say, well, when you disclose that, or it is disclosed to a third party, that whole confidential nature of the relationship breaks. And at that point, the reason for the existence of the privilege ceases, and therefore the privilege ceases. And that is what this government privilege review threatens, because both from appearance and reality, what you have is the adverse party, an adverse party saying, I'm going to do the privilege review for you. It would be as if in a civil context, people would think it would be absurd if I said in the civil context, Mr. Hines and I were debating, Mr. Hines had privilege documents, and I said, I want to see the privilege documents. He said, no, they're privileged. You can't see them. I said, well, they don't look like they're privileged from my review of the privilege law. Tell you what, I'll let Mr. Malik, who's in my office, he'll look at your privilege documents, and he'll have a debate with you about whether or not they're privileged, and he promises he won't be involved in the case. In the civil context, people say, that's ridiculous. Nobody would do that. That's not permissible. But that's precisely what they're saying here. We'll let the Greenbelt people, they're not going to be involved in the case, so it's okay if they look at your privilege materials. They also offer in a footnote in their brief that if this is not permissible to do it this way with the Greenbelt people, they'd be willing to let the U.S. Attorney's Office in Utah do it. I don't think that's a distinction. They wouldn't all be working for Mr. Herr in Baltimore. They'd be working for a U.S. attorney. They would be working for the people in Washington, too. Right, and they're still an adverse party. They're the government, and it's the United States who's investing. And they'd farm it out to another U.S. Attorney's Office. I don't think that makes any difference at all, and I don't think that solves the problem. The problem is an adversary reviewing your privilege material. It's just fundamentally inconsistent with the concept of what the attorney-client privilege is. And for that reason, we respectfully request that. This attorney-client privilege thing, I've been around a lot. It seems to me in West Virginia, it's a crime to breach attorney-client privilege, maybe a felony. I don't know what it is in Maryland. I don't know that it's a crime. It's certainly unethical. It's an annulment offense or disbarment offense for a lawyer that do it in their own context. Absolutely. I mean, the lawyer has a duty to maintain the client's confidence and not be disbarred for not investing. And that's part of the reason that we're here. Because a law firm has clients. They have privileges. It's a law firm's obligation to protect those clients' privileges. And that's the reason we asked the court below to say take them out of the government's hands. If the government wants to continue the search, to review those, they can. And they can do it by special acts. The only way a client's going to talk to the lawyer is if they know they can trust the lawyer and they know that what they say is going to be protected. And the only way the lawyer can give good legal advice is if the client has confidence enough to tell the lawyer the truth. Exactly. If he or she actually committed a crime, they need to tell you. The lawyer needs to know. Then you're not going to defend in a different way. You can put them on the window stand, but you're entitled to defend the case. Yes, sir. And that's the reason that the Supreme Court and this court and all the courts have said this privilege has to be respected, even though it gets in the way of investigators, even though it costs time and it costs money and it's not as efficient as if when the government can come in and they can review it themselves. It's not as efficient. I can see that. But it's the cost of having a privilege. Unless there are any other questions, I thank the court for its time. Thank you, counsel.
judges: Roger L. Gregory, Robert B. King, Allison J. Rushing